IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL RAMIREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-1698 |
| | § | |
| QUANTA SERVICES INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

    Daniel Ramirez worked for Performance Energy Services as a subcontractor on an oil-and-gas rig off the Louisiana coast. Madrid Pitre worked as a subcontractor on the same rig for a different company, Paloma Energy Consultants, L.P. He was Ramirez's roommate on the rig. Late one night, Ramirez, worried that he was having a medical emergency, woke Pitre and asked for help. Pitre escorted Ramirez to a nearby office, researched Ramirez's symptoms, woke the Person-in-Charge—"the head of the platform" who is responsible for projects and events on the rig[1]—and brought that person to Ramirez. Later that day, Ramirez was transported by helicopter to a hospital. Ramirez has sued several entities involved in the offshore rig and his medical emergency. Among them, Ramirez sued Pitre's employer, Paloma Energy, for Pitre's alleged negligence in providing medical aid to Ramirez. Paloma Energy moved for summary judgment on the ground that Pitre neither owed nor breached any duty to Ramirez. (Docket Entry No. 47). Ramirez has responded, and Paloma Energy has replied. (Docket Entry Nos. 55, 56).

---

[1] (Docket Entry No. 47-3 at 12).

Based on the motion, the response, the record evidence, and the applicable law, the court grants the motion and dismisses Ramirez's claims against Paloma Energy, with prejudice. The reasons are explained below.

I. **Background**

    A. **Factual and Procedural Background**

The owners and operators of a rig off the Louisiana coast contracted with Performance Energy to perform construction work on the rig. (Docket Entry No. 47-3 at 117).[2] Ramirez worked for Performance Energy as a welder and pipefitter. (Docket Entry No. 47-1 at 21). The rig owners also hired Paloma Energy to serve as their representative for the contract with Performance Energy. Paloma Energy hired Pitre as an inspector and coordinator for the contract. (Docket Entry No. 47-3 at 18). Ramirez and Pitre were roommates on the rig. (Docket Entry No. 47-1 at 33; Docket Entry No. 47-2 at 24).

Late one night in May 2019, Ramirez awoke thinking that he was having a medical emergency. He woke Pitre, who escorted Ramirez to a nearby office, asked about his symptoms, researched those symptoms online, and left to wake the Person-In-Charge, Joe Breland. Pitre brought Breland to Ramirez within 20 minutes after Ramirez roused Pitre. (Docket Entry Nos. 47-1 at 40–50; Docket Entry No. 47-2 at 55). Breland called a medic on an adjacent platform, who recommended that Ramirez go to a hospital. (Docket Entry No. 47-1 at 34; Docket Entry No. 47-2 at 52). Breland then called a helicopter, which took Ramirez to a hospital. (Docket Entry No. 47-3 at 70).

---

[2] The record evidence does not provide details for this contract, such as when it was made or for how long Performance Energy was to work on the rig.

In May 2020, Ramirez sued Paloma Energy[3] for negligence and gross negligence, alleging that Pitre was negligent in providing aid and that Paloma Energy is liable as Pitre's employer. (Docket Entry No. 36 at ¶¶ 10–12; Docket Entry No. 55 at 1). Paloma Energy has moved for summary judgment. (Docket Entry No. 47).

### B. The Summary Judgment Record

The summary judgment record consists of the following:

- Ramirez's deposition, (Docket Entry Nos. 47-1, 55-1);

- Pitre's deposition, (Docket Entry Nos. 47-2, 55-3);

- Pitre's unsworn declaration, (Docket Entry No. 47-4);

- Breland's deposition, (Docket Entry Nos. 47-3, 55-2);

- the affidavit of Walter Gallant, Paloma Energy's counsel, (Docket Entry No. 47-5);

- an Incident Report describing Ramirez's medical emergency, (Docket Entry No. 55-4);

- an email from Pitre to J.T. Eckstrum, a facilities engineer for the rig operators, (Docket Entry No. 55-5);

- the deposition of Cameron Womack, manager of health, safety and environment and safety environment management systems for one of the rig operators, (Docket Entry No. 55-6);

- the expert opinion of Bruce D. Charash, M.D., (Docket Entry No. 55-7); and

- the preflight paperwork for Ramirez's medical-helicopter transport, (Docket Entry No. 55-8).

---

[3] Ramirez also sued Talos Energy Operating Company LLC, Talos Energy LLC, Talos Energy Offshore LLC, and Talos Gulf Coast Offshore LLC. (Docket Entry No. 36). Although they filed a response to Paloma Energy's motion for summary judgment, Paloma Energy did not seek summary judgment as to them. (Docket Entry Nos. 56, 57). Paloma Energy asks the court to disregard the other defendants' response to its motion, but that response does not affect the analysis or the outcome of Paloma Energy's motion.

## II. The Legal Standard for Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Shepherd on Behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it would affect the outcome of the case" and "a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 882–83 (5th Cir. 2019) (quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When the nonmovant has the burden of proof at trial, "the movant may merely point to the absence of evidence and thereby shift to the nonmovant the burden of demonstrating that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (per curiam) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters. Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must show the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam). If the moving party cannot meet this initial burden, the court must deny the motion, regardless of the non-movant's response. *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Parish Prison*, 663 F. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United*

4

*States*, 600 F.3d 362, 371 (5th Cir. 2010)). The non-movant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotations omitted). Courts deciding a summary judgment motion "view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *Adams v. Alcolac, Inc.*, 974 F.3d 540, 543 (5th Cir. 2020); *see also Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

### III. Analysis

Because Ramirez's negligence claim is based on events offshore, the Outer Continental Shelf Lands Act applies. 43 U.S.C. § 1331. Under that Act, federal law applies, but the law of the adjacent state is incorporated and applied to the extent that it is consistent with the Act. 43 U.S.C. § 1333(a)(2)(A). Louisiana law applies to Ramirez's negligence claims because the rig is adjacent to Louisiana and Louisiana's "negligence regime" is consistent with the Act. *McCarroll v. Wood Group Mgmt. Servs.*, 561 F. App'x 407, 409 (5th Cir. 2014); *see Hufnagel v. Omega Serv. Indus.*, 182 F.3d 340, 349 (5th Cir. 1999) (applying Louisiana law to a negligence claim based on events that occurred on a platform off the Louisiana coast).

Under Louisiana law, Paloma Energy is liable for Pitre's negligence if: (1) Pitre owed Ramirez a duty, he breached that duty, and that breach factually and proximately injured Ramirez; *Davis v. Witt,* 851 So. 2d 1119, 1127 (La. 2003); and (2) Pitre's negligence occurred within the course and scope of his employment, *Orgeron v. McDonald,* 639 So. 2d 224, 226–227 (La. 1994). Paloma Energy argues that it is entitled to summary judgment because the undisputed facts show

5

that Pitre did not owe Ramirez a duty and, even if he did, he did not breach it. (Docket Entry No. 47 at 5). Each argument is addressed in turn.

**A.     Duty**

Whether a person owes a duty is a question of law. *Broussard v. State ex rel. Off. of State Bldgs.*, 113 So. 3d 175, 185 (La. 2013). "In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented." *Carrier v. City of Amite*, 50 So. 3d 1247, 1248–49 (La. 2010) (citing *Socorro v. City of New Orleans*, 579 So. 2d 931, 938 (La. 1991)). "The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.* (citations omitted).

Under Louisiana law, a defendant does not generally have a duty to assist a plaintiff who is in peril, even if the defendant's aid could save the plaintiff. *Macklin v. Businelle*, No. 2011-1025, 2012 WL 2060737, at *2 (La. Ct. App. June 18, 2012), *writ denied,* 98 So. 3d 874 (La. 2012). A duty to assist may arise if: (a) the plaintiff is imperiled as a result of the defendant's negligence; (b) the defendant begins rescue and discourages others from assisting the plaintiff; or (c) there is a special relationship between the parties, such as that between carriers and passengers, innkeepers and guests, or employers and employees. *Id.* (citing *Strickland v. Ambassador Ins. Co.*, 422 So. 2d 1207, 1209 (La. Ct. App. 1982)). Paloma Energy argues that none of those exceptions applies.

Paloma Energy relies on *Macklin v. Businelle*, in which the Court of Appeals of Louisiana concluded that the defendant had not voluntarily assumed a duty to help the plaintiff after finding him unconscious and unresponsive, leaving, attempting to call him, returning to find him still unconscious, moving him to a different room, putting cold water on his face, and calling another

6

friend, who then called 911. 2012 WL 2060737 at *4. Because the defendant did not cause the plaintiff's injury and because the defendant's actions did not discourage others from aiding the plaintiff, the court held that the defendant had not assumed a duty to provide assistance. *Id*. Paloma Energy argues that *Macklin*'s reasoning should apply here.

Ramirez responds that Pitre owed him a duty because, under Louisiana law, "[i]f a person undertakes a task which he has no duty to perform, he must perform that task in a reasonable and prudent manner." *Moore v. Safeway, Inc.,* 700 So. 2d 831, 846 (La. Ct. App. 1996), *writs denied,* 709 So. 2d 735, 744 (La. 1998). Ramirez argues that by voluntarily responding to and helping with Ramirez's medical emergency, Pitre assumed a duty to provide that help in a reasonable and prudent way. Ramirez relies on *Moore v. Safeway*, *id.*; *Bujol v. Entergy Servs., Inc.*, 922 So. 2d 1113 (La. 2004), *adhered to on reh'g* (Jan. 19, 2006) (per curiam); and *LeBlanc v. Stevenson*, 770 So. 2d 766 (La. 2000). Each case is easily distinguishable. In *Moore* and *Bujol*, the plaintiffs were injured at work and asserted negligence claims related to the workplace conditions causing their injuries. *Moore*, 700 So. 2d at 837, 846–47; *Bujol*, 922 So. 2d at 1119–26. In *LeBlanc*, the plaintiff was injured by the defendant's negligence. 770 So. 2d at 770–71. None of these cases involved a duty to provide or procure timely medical aid in response to a request from the plaintiff for help.

Ramirez's cited cases support the proposition that, under Louisiana law, a person who undertakes a task voluntarily assumes a duty to perform that task reasonably. Under Louisiana law, a duty to provide medical aid arises only if the defendant caused the need for the aid, had a special relationship with the plaintiff, or, through his or her actions, discouraged others from giving aid to the plaintiff. The facts here are far closer to *Macklin* than to *Moore*, *Bujol*, or *LeBlanc*.

7

The undisputed record evidence shows that, within 15 to 20 minutes after Ramirez woke Pitre and complained of a need for medical help, Pitre took Ramirez to a nearby office, notified the Person-in-Charge, and brought that person to Ramirez. (Docket Entry No. 47-1 at 41–45, 47; Docket Entry No. 47-2 at 120–122). That person then took over. Ramirez has not identified record evidence that creates a genuine factual dispute material to determining that Pitre did not cause Ramirez's medical emergency or discourage others from assisting Ramirez. And no record evidence supports the inference that Pitre had a special relationship with Ramirez that would give rise to a duty. Pitre did not owe Ramirez a duty to provide aid, as a matter of law.

### B. Breach

Even if Pitre owed Ramirez a duty to provide aid, the undisputed record evidence shows that Pitre did not breach that duty. Ramirez alleges that Pitre "failed to act reasonably and prudently in rendering aid . . . [because he] caused a substantial delay in obtaining medical treatment and/or evacuation." (Docket Entry No. 55 at 1). Ramirez alleges that Pitre "took control of Ramirez's medical emergency" and continued to exercise control over the situation until the medical evacuation helicopter left the rig. (*Id.* at 1, 4).

"The particular facts and circumstances of each individual case determine the extent of the duty and the resulting degree of care necessary to fulfill that duty." *Crane v. Exxon Corp., U.S.A.*, 613 So. 2d 214, 221 (La. Ct. App. 1992) (citing *Socorro*, 579 So. 2d at 938). The undisputed record evidence shows that Pitre lacked the authority to control Ramirez's medical emergency. Pitre, Breland, and Womack testified that Pitre did not have the authority to call a medic on another rig or to summon a medical-evacuation helicopter unless the Person-in-Charge was incapacitated. (Docket Entry No. 47-4 at ¶ 6; Docket Entry No. 47-3 at 94–96, 122–23; Docket Entry No. 55-6 at 60). Breland testified that under the rig's emergency-action plan, the rig owners and operators

had instructed those working on the rig to notify the Person-in-Charge in case of a medical emergency. (Docket Entry No. 47-3 at 125; Docket Entry No. 55-6 at 60). According to Ramirez's testimony, Pitre notified Breland within 20 minutes after Ramirez woke Pitre. (Docket Entry No. 47-1 at 45).

Ramirez argues that there is a genuine factual dispute as to Pitre's role and timing because an email Pitre wrote states that Ramirez woke him around 1:00 a.m. and an incident report states that Breland was notified around 2:15 a.m. (Docket Entry No. 55 at 12–14; Docket Entry No. 55-4; Docket Entry No. 55-5). Ramirez claims that this shows that Pitre delayed notifying Breland. But Ramirez's own testimony undercuts his argument, because he testified that Pitre brought Breland to him within 20 minutes after Ramirez woke Pitre, consistent with other evidence. (Docket Entry No. 47-1 at 45; Docket Entry No. 47-2 at 55, 120–122). Ramirez does not point to affirmative acts that Pitre took to exercise control after he notified Breland or an act of omission that delayed Breland's assumption of control. (Docket Entry No. 55 at 3–4). The undisputed record evidence does not support an inference that Pitre delayed getting Ramirez medical attention or had any role after he notified Breland.

Ramirez also argues that summary judgment is improper because the timeline of events is disputed. (Docket Entry No. 55 at 14). No dispute Ramirez identifies is material. Ramirez and Pitre agree that it took 20 minutes or less after Ramirez roused Pitre for Pitre to notify and bring Breland to help Ramirez. (Docket Entry No. 47-1 at 45–50; Docket Entry No. 47-2 at 55, 120–122). Even if Pitre owed Ramirez a duty to provide aid, the undisputed facts show no breach of that duty, which entitles Paloma Energy to summary judgment as a matter of law.[4]

---

[4] Although the parties did not brief whether Paloma Energy could be held vicariously liable for Pitre's negligence, the record evidence also appears to support granting Paloma Energy summary judgment on that basis, because: (1) when Pitre helped Ramirez, he was not acting in a manner that would "further [Paloma Energy's] interests"; and (2) aiding Ramirez does not appear "closely connected in time, place, and

9

**IV.     Conclusion**

Paloma Energy's motion for summary judgment, (Docket Entry No. 47), is granted. Ramirez's claims against Paloma Energy are dismissed, with prejudice. Ramirez's claims against the other defendants remain.

SIGNED on July 22, 2021, at Houston, Texas.

                                                  *Lee H. Rosenthal*
                                                  Lee H. Rosenthal
                                      Chief United States District Judge

---

causation to [Pitre's] employment duties" on the rig. *Jack v. McFarland*, 175 So. 3d 1169, 1172–73 (La. Ct. App. 2015) (quotation marks omitted). The court does not rely on this basis in granting summary judgment, because Paloma Energy's motion did not address it.